UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JENICA B. DREHMER,

                        Plaintiff,                        DECISION AND ORDER

vs.
                                                  20-CV-6143 (CJS)

NEW YORK STATE, STATE UNIVERSITY OF NEW
YORK, CORNING COMMUNITY COLLEGE,

                        Defendant.
_____

INTRODUCTION

Plaintiff Jenica B. Drehmer has filed a complaint against Defendant(s) New York State, the State University of New York, and Corning Community College alleging violations of Title VII of the Civil Rights Act ("Title VII"), as well as New York State Human Rights Law ("NYSHRL"). Am. Compl., June 26, 2020, ECF No. 6. The matter is presently before the Court on two motions: Corning Community College ("the College") and the State University of New York ("SUNY") have both filed motions to dismiss Drehmer's amended complaint. Mot. to Dismiss, Jul. 10, 2020, ECF No. 7; Mot. to Dismiss, Aug. 17, 2020, ECF No. 11. For the reasons stated below, Defendant SUNY's motion to dismiss [ECF No. 7] is granted, and the College's motion to dismiss [ECF No. 11] is granted in part and denied in part.

BACKGROUND

The facts that follow are alleged in Drehmer's amended complaint. The factual allegations contained in the complaint have been accepted as true, and all reasonable inferences drawn in Drehmer's favor. *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 26 (2d Cir. 2019).

Defendant Corning Community College ("the College") is a public community college under the laws of the state of New York. Am. Compl. at ¶ 12. Drehmer, a Jewish woman, was hired by the College as an adjunct professor in 2009. Am. Compl. at ¶ 16. She received consistently excellent performance reviews throughout her tenure. Am. Compl. at ¶ 17.

In the fall of 2018, Drehmer was teaching a course for the College and informed the class that she was Jewish. Am. Compl. at ¶ 19. On or about September 13, 2018, she received an essay response from one of the students in her class, a male minority, which she interpreted as expressing the view that "Adolf Hitler's systemic [sic] extermination of the Jewish people of Europe to have been a reasonable thing to do given the depravity of the Jewish people and their insidious influence in world affairs." Am. Compl. at ¶ 18. The student who submitted the essay response "had developed a reputation for violent and threatening behavior on campus": he had threatened and intimidated another student in a math class that semester, and verbally abused a front-desk worker at the College. Am. Compl. at ¶ 24. Drehmer was "deeply troubled" by the essay response "to the point where she felt personally threatened by the student and it became impossible for [Drehmer] to effectively instruct her class" with the student present. Am. Compl. at ¶ 19.

On September 14, 2018, Drehmer notified the College of the student's troubling essay response by sending an email to Educational Planner Carol Carter and Associate Dean of Instruction Byron Shaw. Am. Compl. at ¶ 20. In her email, Drehmer summarized the essay response and asked Carter to meet her that afternoon to help remove the

student from the class. *Id.* Drehmer noted, "[t]his student may also be dangerous if I confront him . . . I don't trust that he won't react with violence." *Id.*

That same day, Shaw advised Drehmer to report her concern to the College's Behavioral Intervention Team, which Drehmer did. *Id.* Drehmer then met with Shaw and several others, including Assistant Dean of Students Stacy Johnson, Director of Advising Jackie VanBrunt, and the head of the College's Public Safety department. Am. Compl. at ¶ 21. The group agreed that Drehmer's class should be cancelled for the day, and that Drehmer should speak with the student about his essay response. A few days later, on September 17, 2018, Drehmer met again with Shaw, who was accompanied by Deb Borden, Drehmer's direct supervisor. Am. Compl. at ¶ 22. Drehmer informed Shaw and Borden that she was not comfortable speaking with the student unless the College could guarantee her safety. *Id.* Shaw agreed to contact Carter to ask her to transfer the student out of Drehmer's class, and to arrange for Campus Safety to be present when Plaintiff informed the student to report to Carter for transfer. *Id.* Although Shaw failed to make arrangements with Campus Safety, Drehmer was able to make the arrangements and informed the student on September 17 that he was not to attend class, but to report to Carter instead. Am. Compl. at ¶ 23.

For her part, Carter provided Drehmer with a link on September 14, 2018, for filing a "Code of Conduct" report on the student. Unfortunately, the link did not work and Plaintiff was not able to obtain the proper Code of Conduct report form, despite her efforts over a couple of weeks and her contact with the College's Director of Human Resources, Connie Park. *Id.* Carter did not meet Drehmer as requested on September 14, but did meet with Drehmer in the late afternoon of September 17, after Drehmer had directed the student to Carter's office. Am. Compl. at ¶ 26. At

the September 17 meeting, Carter told Drehmer that it was Drehmer's job to "get the ghetto out of" the student, and accused Drehmer of being racist. *Id.* Two days later, on September 19, 2018, Carter approached Drehmer in the classroom and insisted that Drehmer keep the student in her class, telling Drehmer that it was her job to "fix" the student. Am. Compl. at ¶ 27.

On September 20, 2018, Drehmer emailed Carter because the student was still on Drehmer's class roster. Carter's response – which was also sent by "cc" to Shaw, Park, Borden, VanBrunt, and Johnson – read, in pertinent part:

> Since you refused to meet with [the student] and have the discussion which would have benefitted you both, he still thinks he will be attending your class.
>
> [The student] is not a threat nor has he ever been. I have gotten to know him and as a minority, instructor, and therapist. [sic] I am well qualified to make this evaluation. I only see that you are discriminating against him because of his race, size, and demeanor. Had you taken the opportunity to meet with him, as I suggested, [the College] would not be in the position it is in right now . . . Perhaps you should look within as to why you teach and how this opportunity would have been a way to expand your viewpoint about diversity . . . . [The student] will not harm you. I am more concerned about your attitude than his.
>
> Again, I am a minority. I feel this is discrimination. I will stand by this should [the student] ask me my thoughts.

Am. Compl. at ¶ 28. Carter's email, coupled with an email from Shaw the previous day that indicated he had more important things to do than deal with a problem involving just "one student and one adjunct," led Drehmer to feel that she was under attack by the College for raising genuinely held concerns regarding her own safety and that of the public. Am Compl. at ¶ 27–28. Drehmer was "embarrassed, mortified, stricken with anxiety, and above all else scared." Am. Compl. at ¶ 28.

4

On September 26, the student confronted Drehmer while on campus at the College. Drehmer was "trapped between the student and the [College] welcome desk," when the student "leaned into" her and "demanded that she give his paper to . . . Carter. Student then walked away with a menacing glare." Am. Compl. at ¶ 29. Drehmer was so scared that she asked Campus Safety to walk her to her car, and emailed a plea for protection to Borden, Shaw, VanBrunt, Johnson, Park, and others in the College administration. *Id.* Plaintiff also informed the College that she felt retaliated against and bullied by Carter for expressing her concerns. *Id.*

On September 27, 2018, Drehmer engaged an attorney "who reached out to [Human Resources Director] Connie Park requesting a friendly sit-down meeting so that the matter could be resolved." Am. Compl. at ¶ 30. Park declined the meeting on the grounds that the College has a policy "that an employee may not have representation by a private attorney in her interactions with Human Resources." *Id.* Drehmer's attorney sent a follow-up email to Park the next day, restating Plaintiff's position and urging reasonable accommodation be made. Am. Compl. at ¶ 32.

On September 28, 2018, Drehmer received an email from Shaw stating that the Behavioral Intervention Team had watched the video footage of the student's alleged confrontation of Drehmer on September 26. Am. Compl. at ¶ 31. According to Shaw, the team found no violation of the student Code of Conduct. *Id.* Shaw therefore directed Drehmer to stay away from the student. *Id.* Hours later, Drehmer was dropped from the Spring 2019 teaching roster, and the two courses she had previously been scheduled to teach were given to another teacher. Am. Compl. at ¶ 32.  Drehmer was later assigned a single online course to teach for Spring 2019. Am. Compl. at ¶ 37.

On March 25, 2019, Drehmer filed verified complaints with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"). Am. Compl. at ¶ 37. When her Spring 2019 teaching duties ended in June, Drehmer was removed from the College's teaching roster entirely. *Id.* In September 2019, NYSDHR concluded its investigation, and found that probable cause existed to believe the College engaged in or is engaging in unlawful discriminatory practices. Am. Compl., Ex. D. In February 2020, the EEOC issued Drehmer a "right to sue" letter. Am. Compl., Ex. A.

On March 10, 2020, Drehmer filed a complaint in this Court alleging five causes of action under Title VII of the Civil Rights Act and the New York State Human Rights Law: religious discrimination (disparate treatment) in violation of 42 U.S.C. § 2000e-2, religious discrimination (hostile work environment) in violation of 42 U.S.C. § 2000e-2, religious discrimination (retaliation) in violation of 42 U.S.C. § 2000e-3, religious discrimination in violation of N.Y. Exec. Law § 296 *et seq.*, and retaliation in violation of N.Y. Exec. Law § 296 *et seq.*. Compl., Mar. 10, 2020, ECF No. 1.  In her original complaint, Drehmer identified (and subsequently served) one defendant:

> Defendant, NEW YORK STATE, STATE UNIVERSITY OF NEW YORK, CORNING COMMUNITY COLLEGE . . . is a public community college of the State University of New York with a principal office located in Corning, New York, Steuben County, at 1 Academic Drive.

Compl. at ¶ 12. On June 15, 2020 the College filed a motion to dismiss.

On June 26, 2020, Drehmer filed an amended complaint, again naming only a single defendant. Am. Compl. at ¶ 12. The College then moved to dismiss the amended complaint, as well. Mot. to Dismiss, Jul. 10, 2020, ECF No. 7. Thereafter, SUNY filed a separate motion to dismiss. Mot. to Dismiss, Aug. 17, 2020, ECF No. 11-2.

## SUNY'S MOTION TO DISMISS

In support of its motion to dismiss, SUNY argues that:

> Because [Drehmer] failed to properly serve the State University of New York, the Court lacks personal jurisdiction over SUNY and the Complaint must be dismissed. Plaintiff's Amended Complaint must also be dismissed because SUNY is a State agency entitled to 11th Amendment Immunity and because SUNY does not own, control, or supervise Corning Community College.

Mot. to Dismiss, 1, Aug. 17, 2020, ECF No. 11-2. Drehmer disputes that service was improper and that SUNY is entitled to immunity under the Eleventh Amendment. However, Drehmer "concedes Defendant SUNY's position with regard to its motion pursuant to 12(b)(6) based on the status of SUNY as a separate legal entity not involved in the hiring, firing, disciplining, or setting of personnel policy at community colleges." Resp., 1–2, Sept. 10, 2020, ECF No. 16.

Accordingly, Defendant SUNY's motion to dismiss [ECF No. 11] is hereby granted, and State of New York and SUNY may be removed as defendants listed in this action.

## THE COLLEGE'S MOTION TO DISMISS

In support of its motion to dismiss, the College identifies several grounds upon which it believes Drehmer's complaint is deficient. The College argues:

> [I]t is well-established that the Eleventh Amendment protects the College, as a SUNY school, against suits like this under the New York State Human Rights Law. Accordingly, [Drehmer]'s state law claims should be dismissed.
>
> [With respect to disparate treatment, Drehmer] does not allege any adverse employment action that she claims resulted from religious discrimination. Thus, she has not plausibly stated a claim for religious discrimination.
>
> [Drehmer] alleges that she was subjected to a hostile work environment by two coworkers based on her religion and in retaliation for bringing a complaint about a student. However, [Drehmer] identifies only . . . three

7

> statements from these co-workers, which are not sufficiently severe or pervasive to constitute a hostile work environment. [Drehmer] also fails to plausibly allege that her co-workers' conduct was based on her religion or that the College condoned any such conduct. Finally, her claim for "retaliatory hostile work environment" should be dismissed as no such claim exists as a matter of law.

Mem. of Law, 1, Jul. 10, 2020, ECF No. 7-3.

Sovereign Immunity under the Eleventh Amendment

The College argues that Drehmer's claims under the New York State Human Rights Law should be dismissed because they are barred by the Eleventh Amendment's grant of sovereign immunity to the states. Def. Mem. of Law, 4–5, Jul. 10, 2020, ECF No. 7-3. Quoting, *inter alia*, the Second Circuit's opinion in *Dube v. State University of New York*, 900 F.2d 587, 594 (2d Cir. 1990), the College argues that "for Eleventh Amendment purposes, SUNY is an integral part of the government of the State of New York and when it is sued the State is the real party." Def.'s Mem. of Law at 4.

However, as SUNY stated in its motion to dismiss, the College and SUNY are not one and the same entity. In *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 132 (2d Cir. 2015), the Second Circuit reviewed a district court's holding that Westchester Community College ("WCC"), a community college in the State University of New York ("SUNY") system, was not entitled to sovereign immunity under the Eleventh Amendment. After a thorough review of the caselaw and statutory framework, the appeals court concluded "that a finding of sovereign immunity for WCC would not serve the twin aims of the Eleventh Amendment: immunity would not further the state's interest in preserving its treasury, nor would it protect the integrity of the state." *Leitner*, 779 F.3d at 140. Consequently, the court held that WCC was not an arm of the state

entitled to sovereign immunity under the Eleventh Amendment. *Id.*

As the Second Circuit noted, "New York law defines 'community colleges' as '[c]olleges established and operated pursuant to the [New York Education Law] … and receiving financial assistance from the state.'" *Leitner*, 779 F.3d at 132 (quoting N.Y. Educ. Law § 350(2)). That is, despite being governed by state education law, and receiving financial assistance from the state, community colleges are, under New York law, distinct legal entities. Like WCC, the College in this case is a community college within the SUNY system. Am. Compl. at ¶ 12. Also like WCC, the College is governed by its own board of trustees, which is different from the SUNY board of trustees. *See, e.g.,* Am. Compl. (Ex. E) (reproducing the Regional Board of Trustee's Resolution #4050-15, and referencing the "Regional Board of Trustees Policy Manual"). Pursuant to New York State Education Law, the College's board appoints the College's President, adopts the curriculum, and prepares the annual budget, all subject to approval by SUNY's board. N.Y. Educ. Law § 6306(2). Judgments against the College are paid out of its budget, one-third of which is provided by the state. *See* N.Y. Educ. Law § 6304(1).

In short, as "community colleges" under N.Y. Educ. Law § 350(2), the College and WCC are similarly situated entities. Consequently, the Court adopts the Second Circuit's reasoning in *Leitner*, and finds that the College is not an arm of the state entitled to sovereign immunity under the Eleventh Amendment. Drehmer's claims under the New York State Human Rights Law may not, therefore, be dismissed on Eleventh Amendment grounds.

Religious Discrimination under Title VII and NYSHRL

As indicated above, Drehmer's amended complaint alleges five claims: religious discrimination (disparate treatment) in violation of 42 U.S.C. § 2000e-2, religious discrimination (hostile work environment) in violation of 42 U.S.C. § 2000e-2, religious discrimination (retaliation) in violation of 42 U.S.C. § 2000e-3, religious discrimination in violation of N.Y. Exec. Law § 296 *et seq.*, and retaliation in violation of N.Y. Exec. Law § 296 *et seq.*. The College seeks dismissal only of Drehmer's claims involving disparate treatment, hostile work environment, and her claims under the New York State Human Rights Law. Mem. of Law at 11. The College does not seek dismissal at this stage of Drehmer's retaliation claim under Title VII, except insofar as it alleges a "retaliatory hostile work environment," which the Court agrees is not a legally cognizable claim. Therefore, because the Drehmer's New York State Human Rights Law claims are not barred by the Eleventh Amendment, her claims for retaliation in violation of 42 U.S.C. § 2000e-3 and of N.Y. Exec. Law § 296 *et seq.* may proceed forward.

With respect to the other three claims, the Court notes that the substantive standards applicable to claims of employment discrimination under Title VII are also generally applicable to claims of employment discrimination brought under the New York State Human Rights Law. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citations omitted). Under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff complaining of employment discrimination must first make out a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an

adverse employment action; and (4) circumstances give rise to an inference of discrimination. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).

In the present case, the first two elements of Drehmer's *prima facie* case are not contested. It is undisputed that Drehmer is Jewish. It is also undisputed in the papers that Drehmer had received excellent performance reviews until the Fall of 2018. The dispute at this stage of the case revolves around whether Drehmer suffered an adverse employment action, and whether the circumstances give rise to an inference of discrimination.

### *Legal Standard*

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. It requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Twombly*, 550 U.S. at 556. Where a court is unable to infer more than the possibility of misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. *Iqbal*, 556 U.S. at 678.

### *Disparate Treatment in violation of 42 U.S.C. § 2000e-2*

Drehmer argues that after she asked that the student be removed from her class, she was disparately treated on the basis of her religion. Am. Compl. at ¶ 39. She states

that she was "ridiculed, scolded, disciplined, disparaged, denied access to [the] Code of Conduct complaint process, denied her normal work assignment, called a racist, and terminated because she engaged in protected activity." *Id.* By contrast, Drehmer notes that "fellow professor Stephanie Allegretto, who is not Jewish," was not subjected to any of those conditions after Allegretto reported misconduct by the same student to the College during the same semester. *Id.* Drehmer claims that she "was treated differently because of her ethnoreligious Jewish identity and or the nature of her complaint sounding in protected activity, i.e., complaining of religious discrimination." *Id.*

A showing of disparate treatment — that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside her protected group — is a legitimate means of raising an inference of discrimination for purposes of making out a *prima facie* case. *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). A plaintiff relying on a theory of disparate treatment "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id.* (citation and internal quotation marks omitted).

Here, Drehmer's disparate treatment claim fails because Drehmer fails to plausibly allege that "she was similarly situated in all material respects" to Allegretto. Drehmer does allege that when Allegretto, a non-Jewish colleague at the College, had a problem with the same student earlier in the semester, "the Code of Conduct report had been promptly furnished her . . . ." Am. Compl. at ¶ 20. However, whereas Drehmer's complaint was an objection to the student's views of Adolf Hitler as expressed in his written essay response, Allegretto is alleged to have reported that "the student

threatened and intimidated another student in a fall 2018 math class . . . ." Am. Compl. at ¶ 24. Moreover, there is no indication that Allegretto sought the student's transfer from her class, or further interacted with the student or administration on the matter in any way.

In other words, not only does the nature of Allegretto's complaint appear to be different than Drehmer's, but there is no indication of the means by which Allegretto requested a "Code of Conduct report," that Allegretto sought the student's transfer from her class, or that Allegretto escalated the situation to the attention of the College's administration. Therefore, Drehmer has failed to plausibly allege that Allegretto was similarly situated, and the Court finds no merit in Drehmer's disparate treatment claim.

*Hostile work environment in violation of*
*42 U.S.C. § 2000e-2 and N.Y. Exec. Law § 296 et seq.*

Drehmer alleges that she was subject to a pattern of harassment by the College on account of her religion. Am. Compl. at ¶ 43. She states that:

> [b]eginning September 13, 2018 and continuing until June 6, 2019 [she] was subject to ridicule, scolding, discipline, disparagement, was denied her normal work assignments, was denied access to the Code of Conduct complaint process, was labeled racist, and was terminated because she was Jewish, and or because she engaged in protected activity . . .

Am. Compl. at ¶ 43. The College counterargues that Drehmer's factual allegations are not sufficiently severe or pervasive to state a hostile work environment claim, and that she has not plausibly alleged a basis to impute any harassment onto the College. Def.'s Mem. of Law at 7–10. Because the Court agrees with the College's former argument, it need not address the latter.

13

In order to establish a claim of hostile work environment, a plaintiff's allegations must include not only that she "subjectively perceived the environment to be abusive," but also that the environment was objectively hostile and abusive, that is, that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted)). To analyze a hostile work environment claim, the Court must assess the totality of the circumstances, and consider a variety of factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance . . . ." *Demoret v. Zegarelli*, 451 F.3d 140, 149–50 (2d Cir. 2006) (quoting *Harris*, 510 U.S. at 23). Generally, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

The Court finds that the allegations in the present case do not present a situation where "reasonable jurors could disagree as to whether alleged incidents of . . . harassment would have adversely altered the working conditions of a reasonable employee." *Kleehammer v. Monroe Cty.*, 743 F. Supp.2d 175, 184 (W.D.N.Y. 2010) (citation omitted). In the present case, although the student himself may have made remarks that Drehmer found offensive, a single instance of Shaw pejoratively referring to Drehmer as an "adjunct" – a status she admittedly held with the College – or a few

14

instances of Carter accusing Drehmer of discrimination against the student, do not constitute frequent or severe misconduct. Moreover, the allegations do not indicate that the actions imputed to the College were physically threatening, and Drehmer's assertions regarding Carter's intent to humiliate her via email were conclusory. More to the point, no factual allegations in the amended complaint or supporting papers by either side even remotely suggests to this Court that the comments made by Shaw, Carter, or any other employee of the College were made because of Drehmer's religious practices or beliefs.

Hence, the Court finds Drehmer's hostile work environment claims in violation of 42 U.S.C. § 2000e-2 and of N.Y. Exec. Law § 296 *et seq.* to be without merit.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that SUNY's motion to dismiss the amended complaint [ECF No. 11] is granted and the Clerk is directed to remove State of New York and SUNY as defendants in this action; and it is further

ORDERED that Defendant Corning Community College's motion to dismiss the amended complaint [ECF No. 7] is granted in part, and denied in part. Drehmer's claims that she was subject to disparate treatment and a hostile work environment in violation of Title VII and the New York State Human Rights Law are dismissed. Drehmer's claims of retaliation in violation of 42 U.S.C. § 2000e-3 and of N.Y. Exec. Law § 296 *et seq.* may go forward; and it is further

ORDERED that Defendant Corning Community College must file an answer to Drehmer's claims of retaliation within thirty days of the date of this order.

Dated:    October 22, 2020
          Rochester, New York

                                              ENTER:

                                              _Charles J. Siragusa_
                                              CHARLES J. SIRAGUSA
                                              United States District Judge